UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

TUITION OPTIONS, LLC, a Delaware
Limited Liability Company,

    Plaintiff,

v.

PROJECT ON PREDATORY STUDENT
LENDING, INC. a Massachusetts Non-Profit
Corporation, and MAYER LAW PLLC, a Florida
Limited Liability Company,

    Defendants.
_____/

## COMPLAINT

Plaintiff, TUITION OPTIONS, LLC ("Tuition Options"), hereby sues Defendants, PROJECT ON PREDATORY STUDENT LENDING, INC. ("PPSL"), and MAYER LAW PLLC ("MAYER") and alleges the following:

1. Tuition Options brings this action to recover damages caused by PPSL's and MAYER's defamatory statements made in public filings falsely claiming that Tuition Options is operating unlicensed in Florida and is otherwise engaged in predatory lending practices.

2. Tuition Options has repeatedly asked PPSL and MAYER to remove the false, misleading and defamatory statements from its public filings, but PPSL and MAYER have failed to do so.

3. As a result of PPSL's and MAYER's reckless conduct, Tuition Options has suffered significant damage to its reputation and finances and has become subject to heightened regulatory scrutiny.

## JURISDICTION, VENUE AND PARTIES

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as this matter involves parties who are citizens of different states with complete diversity of citizenship for damages greater than $75,000, exclusive of interest and costs.

5. Tuition Options is a Delaware Limited Liability Company with its principal office located at 14000 Horizon Way #400, Mt. Laurel Township, New Jersey. As a Limited Liability Company, all of Tuition Options members are either citizens of Delaware, Illinois, Virginia or New Jersey.

6. PPSL is a Massachusetts Non-Profit Corporation with its principal office located at 769 Centre Street, Suite 166, Jamaica Plain, Massachusetts, and is thus deemed a citizen of the State of Massachusetts.

7. MAYER is a Florida Limited Liability Company, whose member is a citizen of the State of Florida, with its principal office located at 171 Dommerich Drive, Maitland, Florida, and is thus deemed a citizen of the State of Florida.

8. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim and the harm to Tuition Options' business occurred within the Southern District of Florida.

## GENERAL FACTUAL ALLEGATIONS

9. On December 2, 2022, PPSL and MAYER, on behalf of a group of nursing students, filed the Class Action Lawsuit against Health Career Institute LLC (d/b/a HCI College LLC and HCI Acquisition LLC) ("HCI"), Florian Education Investors, LLC and Steven W. Hart in the Southern District of Florida (Case No.: 9:22-cv-81883) (hereinafter, the "Class Action Lawsuit").

10. HCI is a for-profit nursing school in Fort Lauderdale, Florida that offers an Associate of Science in Nursing degree (the "RN Program").

11. For students that require additional financial assistance, HCI offers an institutional loan program under which students, as the borrowers, enter into retail installment contracts ("RIC") with HCI as the lender. HCI College is the named lender on the retail installment contracts.

12. Tuition Options is a third-party student loan servicer that services institutional loans originated by HCI.

13. The Class Action Lawsuit alleges that HCI engaged in a deceitful pattern of behavior which deliberately and consistently harmed its students in violation of federal and state law. According to the Class Action Lawsuit, HCI deliberately schemed to block its RN Program students from graduating and taking the nurse licensing exam (NCLEX) and misrepresenting its accreditation status and NCLEX passage rates to lure students to enroll in its RN Program under false pretenses. In addition, the Class Action Lawsuit alleges that HCI should be held accountable for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*, unjust enrichment and intentionally targeting black students with a subpar product and predatory lending practices.

14. Therefore, the nursing students are demanding to have their loans canceled and payments refunded, and are seeking an injunction requiring HCI to allow them to take the NCLEX exam. In the Class Action Lawsuit, the Court is asked to enter an Order Judgment against HCI et al. awarding damages to class members of approximately $36,0000,000.

15. Tuition Options is not a party in the Class Action Lawsuit. However, there are numerous false, misleading and defamatory references to Tuition Options in the various public pleadings filed by PPSL and MAYER, which suggest that Tuition Options was engaging in

3

predatory lending practices for or with HCI and is unlicensed to engage in retail installment transactions in Florida in violation of Fla Sta. 520.32(1). All references to Tuition Options' involvement and allegations are categorically false other than Tuition Options being a third-party servicer, which is irrelevant to the Class Action Lawsuit.

16. The Original Complaint, which was publicly filed, contains *twenty-two (22)* false and/or misleading references to Tuition Options. Defendants accurately refer to Tuition Options as the servicer to HCI in Paragraph 120 of the Original Complaint which demonstrates that Defendants knowingly and purposefully fabricated *twenty-one (21)* false and/or misleading references to Tuition Options. A copy of the Original Complaint is attached hereto as Exhibit A.

17. A summary of the false and/or misleading statements made in the Original Complaint is attached hereto as Exhibit B.

18. Most shockingly, the Original Complaint asserts that Tuition Options is operating unlicensed in Florida in violation of Florida law, Fla. Sta. 520.32(1).

19. On December 21, 2022, Tuition Options sent correspondence to PPSL and MAYER clarifying the false and/or misleading statements made in the Original Complaint in a good faith effort to resolve what Tuition Options believed was a misunderstanding. The correspondence provided specific rebuttal to the false and defamatory statement made by Defendants that Tuition Options is operating unlicensed in Florida. A copy of the letter sent by Tuition Options to PPSL and MAYER is attached hereto as Exhibit C.

20. Tuition Options' legal counsel then spoke with PPSL and MAYER verbally on January 5, 2023, and reiterated that the references to Tuition Options in the Original Complaint were false and/or misleading.

21.     Nonetheless, on February 21, 2023, PPSL and MAYER filed a First Amended Complaint, which contains *thirty-five (35)* false and/or misleading references to Tuition Options. In the First Amended Complaint, Defendants accurately refer to Tuition Options as the servicer to HCI in Paragraph 30 which demonstrates that Defendants fabricated *thirty-four (34)* knowingly false and/or intentionally misleading references to Tuition Options in the First Amended Complaint. Tuition Options remains an unnamed party in the Class Action Lawsuit. A copy of the First Amended Complaint is attached hereto as Exhibit D.

22.     A summary of the false and/or intentionally misleading statements made in the First Amended Complaint is attached hereto as Exhibit E.

23.     The First Amended Complaint was filed *sixty-two (62) days* after Defendants received the December 21, 2022, letter from Tuition Options' legal counsel which spelled out the egregious errors made by the Defendants in the Original Complaint and *forty-seven (47) days* after Defendants spoke directly with Tuition Options' legal counsel via phone regarding same. Despite knowing its falsity, Defendants filed the First Amended Complaint with reckless disregard of fact as it retains the prior knowingly false and/or intentionally misleading information from the Original Complaint, including that Tuition Options was operating unlicensed in Florida, and added new false and/or intentionally misleading statements about Tuition Options.

24.     On May 19, 2023, Tuition Options sent a *second* correspondence to PPSL and MAYER regarding the purposefully false and/or intentionally misleading references to Tuition Options in the Original Complaint and First Amended Complaint, and "demand[ing] that all statements regarding Tuition Options other than as a third-party servicer to HCI College be removed from the Amended Complaint immediately." The May 19, 2023, correspondence included a copy of the December 21, 2022, as an attachment and was the *third* outreach to

Defendants regarding the erroneous references to Tuition Options in the Class Action Lawsuit. A copy of the correspondence dated May 19, 2023, is attached hereto as Exhibit F.

25.     The May 19, 2023, correspondence further states that "[i]f the required corrections are not managed, Tuition Options will exercise all remedies under the law, including pursuing an action under Chapter 770 of the Florida Statutes and will seek reimbursement of legal fees and damages resulting from [PPSL's] and [MAYER's] false statements about [Tuition Options]." *See* Exhibit F.

26.     Defendants did not respond to the May 19, 2023, correspondence nor did they contact Tuition Options or Tuition Options' legal counsel to verify the facts presented in the May 19, 2023, correspondence..

27.     Thereafter, on July 28, 2023, Tuition Options accepted service of a subpoena duces tecum for records from PPSL and MAYER in the Class Action Lawsuit (the "Subpoena").

28.     On August 16, 2023, Tuition Options provided a letter objection to the Subpoena, which, for a *fourth time*, clarifies that "Tuition Options is merely a third-party loan servicer for [HCI]" and that "Tuition Options continues to object to the false and misleading manner in which the pleadings insinuate that Tuition Options acted as a sales finance company or a student loan lender to any purported class described in the lawsuit." A copy of the correspondence dated August 16, 2023, is attached hereto as Exhibit G.

29.     Again, despite knowing the falsity of the statements, PPSL and MAYER filed the Second Amended Complaint on August 31, 2023, with reckless complete disregard of fact as it retains the prior purposefully false and/or intentionally misleading information from the Original Complaint and First Amended Complaint and also new purposefully false and/or intentionally misleading statements about Tuition Options. The Second Amended Complaint contains *thirty-*

*three (33)*) purposefully false and/or intentionally misleading statements about Tuition Options. The Second Amended Complaint was filed *one hundred and three (103) days* after the May 19, 2023, correspondence was sent to Defendants and *two hundred fifty-three (253) days* after the December 21, 2022, wherein Tuition Options notified Defendants of the false and intentionally misleading statements in the Class Action Lawsuit. A copy of the Second Amended Complaint is attached hereto as Exhibit H.

30. Defendants accurately refer to Tuition Options as the servicer to HCI in Paragraphs 168 and 190 of the Second Amended Complaint which demonstrates that Defendants fabricated *thirty-one* (31) false and/or intentionally misleading references to Tuition Options in the Second Amended Complaint. Tuition Options remains an unnamed party in the Class Action Lawsuit.

31. A summary of the purposefully false and/or intentionally misleading statements made in the Second Amended Complaint is attached hereto as Exhibit I.

32. PPSL and MAYER most certainly knew at the time of filing the Second Amended Complaint that Tuition Options is a software provider and third-party loan servicer for school clients. Tuition Options is not a sales finance company or a student loan lender to HCI.

33. Therefore, Tuition Options should not be referenced in the Class Action Lawsuit as anything other than a third-party loan servicer. However, the fact that Tuition Options is a third-party servicer is absolutely irrelevant to the Class Action Lawsuit.

34. Regarding the repeat references to the short-term commercial loan agreement in the Original Complaint, First Amended Complaint and Second Amended Complaint, the short-term commercial loan agreement to HCI was paid in full and the UCC filing terminated in November 2018 as evidenced by Florida public record, and, thus, evidently predates the relevant period for the Class Action Lawsuit, which concerns alleged activities starting September 1, 2019. The short-

term commercial loan agreement has absolutely nothing to do with institutional loans made by HCI to student borrowers during the Class Period. Defendants attached as an Exhibit to the Original Complaint, First Amended Complaint and Second Amended Complaint a copy of the original UCC filing by Tuition Options. At that time, or after being corrected by Tuition Options on December 21, 2022, Defendants would have, or should have, confirmed the publicly filed UCC termination filed in November 2018 for the short-term commercial loan between HCI and Tuition Options. However, Defendants recklessly disregarded fact and chose to intentionally ignore the public UCC termination in November 2018 to maliciously incorporate Tuition Options into the Class Action Lawsuit.

35. There is no "Tuition Options loan", "Tuition Options loan option", "Tuition Options program", "Tuition Options payment plan" or "Tuition Options balance" as Defendants falsely referenced in the Original Complaint. Even though the false statements in the Original Complaint were reported to Defendants in writing and verbally as completely false by Tuition Options, Defendants recklessly disregarded fact and intentionally included the same references the First Amended Complaint and Second Amended Complaint.

36. On December 21, 2022, Tuition Options explicitly advised PPSL and MAYER that the short-term commercial loan agreement between HCI and Tuition Options referenced in the Original Complaint was terminated and irrelevant to the Class Action Lawsuit.

37. On January 5, 2023, Tuition Options explicitly advised PPSL and MAYER verbally that the short-term commercial loan agreement between HCI and Tuition Options referenced in the Original Complaint was terminated and irrelevant to the Class Action Lawsuit.

38. However, PPSL and MAYER demonstrated reckless disregard by deliberately ignoring the factual information, as well as the public UCC termination filing and continued to

publish knowingly false and intentionally misleading statements regarding Tuition Options to suggest and maliciously misrepresent that Tuition Options was engaging in predatory lending practices with HCI.

39. While the standard assignment language in HCI's retail installment contract ("RIC") states that the contract "*may* be assigned to Tuition Options," there have been no such assignments in any way related the proposed class members or at any time relevant to the Class Action Lawsuit. Therefore, any attempt to connect the RIC to Tuition Options is intentionally misleading and a reckless disregard of fact.

40. Defendants also state that certain retail installment contracts were "preassigned" to Tuition Options in the Original Complaint, Amended Complaint and Second Amended Complaint which is absolutely false. Defendant knowingly and intentionally fabricated the term "preassigned" to purposefully harm Tuition Options in the Class Action Lawsuit as "preassigned" is not a term used in the retail installment contracts at issue. The actual term used in the retail installment contracts for the class members is "*may*" assign.

41. HCI is the named lender in the RICs issued under its institutional lending program including the class member RICs referenced in the Class Action Lawsuit. Therefore, there is no basis for the allegations or references to Tuition Options in the Original Complaint, First Amended Complaint or Second Amended Complaint. Any reference to Tuition Options in the Class Action Lawsuit is irrelevant to the Class Action Lawsuit – even as a third-party servicer. The fact that Tuition Options is a third-party servicer to HCI is irrelevant to the Class Action Lawsuit.

42. The categorically false and irrelevant references to Tuition Options, layered between the serious allegations against HCI, have significantly harmed Tuition Options reputationally and financially.

43.     The overall gist and sting of the knowingly false and/or intentionally misleading references in the Original Complaint, First Amended Complaint and Second Amended Complaint portrays Tuition Options as a predatory institution, guilty of unethical and illegal financial misconduct and intentional harm to the class members which is unequivocally false and deliberately deceptive.

44.     Moreover, PPSL has publicized the Class Action Lawsuit on its website and in at least one press release, making these false and defamatory references in the Original Complaint and First Amended Complaint filed in the Class Action Lawsuit available to the general public. *See* generally, https://www.ppsl.org/cases/roberson-v-hci, https://www.ppsl.org/news/category/Press+Releases

45.     It is unknown to whom PPSL distributed the press release, which contained hyperlinks to the Original Complaint. However, PPSL's press release was clearly seen and was republished, along with its hyperlinks to the Original Complaint by Nurse.org. https://nurse.org/articles/hci-college-florida-nursing-student-lawsuit/.

46.     According to its own website, Nurse.org has in excess of 1.5 million current and future nursing students visiting its website on a monthly basis. https://nurse.org/about

47.     PPSL is clearly aware of the reach of its press releases and republished the media coverage by nurse.org of its press release on its own website. https://www.ppsl.org/news?offset=1677866700409&category=Coverage

48.     It is further unknown how many additional individuals or media entities reviewed the press release or otherwise reviewed PPSL's website and the attendant hyperlinks to the Original Complaint and First Amended Complaint and saw these false and defamatory references to Tuition Options.

49. The damage caused by the publication of false and defamatory statements against Tuition Options, however, cannot be understated.

50. The student loan industry is highly regulated with both state and federal oversight. Tuition Options, as a student loan servicer, is subject to audits, examinations, annual reports and licensure requirements from fifteen (15) state regulators. In addition, Tuition Options must continually attest that the company and its officers have not violated any state and federal regulations as a student loan servicer.

51. Tuition Options services a market of over 6,000 schools, both public and private, with over 19 million students attending short term (12 months, 2 year and 4 year) schools, offering various degrees or diplomas.

52. Tuition Options is a third-party servicer in Florida. It is not a sales finance company or lender, and it is not required to maintain a servicer license in Florida.

53. The private student loans serviced by Tuition Options are originated by Title IV eligible schools and non-Title IV eligible schools.

54. Over 90% of Tuition Options' servicing revenues are derived from Title IV eligible and non-Title IV eligible schools, which are subject to high standards of disclosure and compliance.

55. Tuition Options has built a strong reputation as a private student loan servicer over the last fifteen (15) years.

56. The Office of Federal Student Aid ("FSA") is a division of the Department of Education ("DOE") and is responsible for managing the student financial assistance programs authorized under Title IV of the Higher Education Act of 1965 which includes auditing and regulating Title IV schools. Title IV schools are required to follow DOE regulations. The FSA

website specifically states in Dear Colleague Letter Gen 23-03 regarding the requirements and responsibilities for Third-Party Servicers: "Regardless of whether an entity is considered a [third party servicer] for Title IV purposes, the institution/school has a fiduciary responsibility to ensure that any contracts, policies, procedures, products, or systems used by the institution or its contractors/providers are compliant with applicable laws and regulations."

57. Federal regulations clearly state that Title IV schools have a fiduciary responsibility to review any third-party servicer to confirm they abide by both state and federal laws governing the servicer and software utilized by the school.

58. Schools have been fined severely over the past fifteen (15) years for not complying with federal and/or state laws governing them and, as such, any third-party servicer which is not compliant with licensure or regulatory requirements, exposes a school to additional fines and penalties.

59. Therefore, false allegations or intentionally misleading references in public lawsuits or other media that smear Tuition Options' name and state that it is operating unlicensed have the effect of severely damaging and significantly impacting Tuition Options' business with new and existing clients.

60. As a result of PPSL's and MAYER's demonstrably false and/or intentionally misleading accusations, existing clients could cease doing business with Tuition Options causing a severe loss of revenues of a minimum of $4 million to $7 million.

61. Additionally, prospective new clients may not consider Tuition Options eligible for a third-party servicer contract.

62. All conditions precedent to the filing of this action have been satisfied or waived.

## COUNT I
## DEFAMATION

63. Tuition Options re-alleges paragraphs 1 – 62 as if fully stated herein.

64. PPSL and MAYER knowingly made false and/or intentionally misleading statements or made such statements with evident reckless disregard for the truth, regarding Tuition Options operating unlicensed in Florida and other manufactured statements about Tuition Options, and published those statements in the Original Complaint, First Amended Complaint and Second Amended Complaint. Tuition Options is an unnamed party in the Class Action Lawsuit. Any and all references to Tuition Options in the Original, First Amended and Second Amended Complaint are irrelevant to the Class Action Lawsuit.

65. Those same knowingly false and defamatory statements were again republished by PPSL via PPSL's website and via its press release.

66. PPSL had no legitimate reason to publicize its false and defamatory statements via its website and press release – its *ex parte* publication of such statements were not in furtherance of the underlying litigation and were instead designed to garner publicity at the expense of Tuition Options' reputation

67. PPSL and MAYER were put on notice *four times* that the information contained in the Original Complaint, First Amended Complaint and Second Amended Complaint regarding Tuition Options was incorrect; yet despite knowing its falsity, PPSL and MAYER have not moved to strike the false and defamatory statements, issued a retraction, or otherwise scrubbed such documents from its website. In fact, Defendants have not contacted or attempted to contact Tuition Options or Tuition Options' legal counsel to address the corrections or information received in the correspondence they received from Tuition Options.

68. As a direct and proximate result of PPSL's and MAYER's intentional defamatory statements, Tuition Options' reputation and finances have been substantially impacted. Additionally, Tuition Options has become subject to additional heightened regulatory scrutiny and further becomes liable for unnecessary legal costs and management participation in the laborious process to correct such erroneous and fabricated statements publicly. Tuition Options attests in Servicing Agreements and to state agencies for student loan servicer license requirements that the company is complying with state and federal regulations. False and intentionally misleading public statements about Tuition Options substantially impact the company's licensure, reputation and revenues.

69. Tuition Options is therefore entitled to recover compensatory and punitive damages in an amount to be proven at trial, and other relief that the Court may deem proper.

WHEREFORE, Tuition Options demands judgment against PPSL and MAYER for compensatory and punitive damages for PPSL's and MAYER'S defamatory actions, interest, and such further relief as the Court deems appropriate.

## COUNT II
## DEFAMATION *PER SE*

70. Tuition Options re-alleges paragraphs 1 – 62 as if fully stated herein.

71. PPSL and MAYER knowingly made false and intentionally misleading statements or made such statements with evident reckless disregard for the truth, regarding Tuition Options operating unlicensed in Florida and other manufactured and manipulative statements about Tuition Options and published those statements in the Original Complaint, First Amended Complaint and Second Amended Complaint.

72. Those same purposefully false and intentionally defamatory statements were republished via PPSL's website and its press release.

73. PPSL had no legitimate reason to publicize its false and defamatory statements via its website and press release – its *ex parte* publication of such statements were not in furtherance of the underlying litigation and were instead designed to garner publicity at the expense of Tuition Options' reputation as a student loan servicer.

74. PPSL and MAYER were put on notice *four (4) times* that the information contained in the Original Complaint and First Amended Complaint regarding Tuition Options was blatantly incorrect; yet, despite knowing its falsity, PPSL and MAYER has not moved to strike the defamatory statements, issued a retraction or otherwise scrubbed such information from its website.

75. Such false statements constitute defamation *per se* as they tend to injure Tuition Options' business and claim that Tuition Options is operating its business illegally.

76. As a direct and proximate result of PPSL's and MAYER's *per se* defamatory statements, Tuition Options' reputation and finances have been substantially impacted. Additionally, Tuition Options has become subject to heightened regulatory scrutiny and becomes liable for unnecessary legal costs and management participation in the laborious process to correct such erroneous and fabricated statements publicly. Tuition Options attests in Servicing Agreements and to state agencies for student loan servicer license requirements that the company is complying with state and federal regulations. False and deceptive public statements about Tuition Options substantially impact the company's licensure, reputation and revenues.

77. Tuition Options is therefore entitled to recover compensatory and punitive damages in an amount to be proven at trial, and other relief that the Court may deem proper.

WHEREFORE, Tuition Options demands judgment against PPSL and MAYER for compensatory and punitive damages for PPSL's and MAYER's defamatory actions, interest, and such further relief as the Court deems appropriate.

## COUNT III
## DEFAMATION BY IMPLICATION

78. Tuition Options re-alleges paragraphs 1 – 62 as if fully stated herein.

79. PPSL's and MAYER's publication of statements in the Original Complaint, First Amended Complaint and Second Amended Complaint of and concerning Tuition Options were false and/or misleading and indicate the existence of other facts which are defamatory.

80. PPSL and MAYER published the false and/or intentionally misleading statements in public filings which were not privileged in any manner.

81. Those same false and/or defamatory statements were republished via PPSL's website and its press release.

82. PPSL had no legitimate reason to publicize its false and defamatory statements via its website and press release – its *ex parte* publication of such statements were not in furtherance of the underlying litigation and were instead designed to garner publicity at the expense of Tuition Options' reputation.

83. PPSL and MAYER have defamed Tuition Options by negligently, knowingly, intentionally, willfully and/or recklessly publishing the false and/or misleading statements of and concerning Tuition Options, which PPSL and MAYER knew or should have known to be false and/or misleading.

84. PPSL and MAYER made the false and defamatory statements with reckless disregard for their truth or falsity and with actual malice.[1]

85. PPSL and MAYER had no reasonable basis for believing the truth of its statements of and concerning Tuition Options.

86. PPSL's and MAYER'S statements were defamatory in that they created a false impression of Tuition Options.

87. A reasonable person would understand PPSL's and MAYER'S statements to impart the false innuendo that Tuition Options was engaging in predatory and unlicensed lending activities, which would be highly offensive to a reasonable person.

88. PPSL and MAYER juxtaposed a series of facts of and concerning Tuition Options to imply and suggest a defamatory and injurious connection between Tuition Options and HCI.

89. As a direct and proximate result of PPSL's and MAYER's defamatory and/or intentionally misleading statements, Tuition Options' reputation and finances have been substantially impacted. Additionally, Tuition Options has become subject to additional heightened regulatory scrutiny.

90. Tuition Options is therefore entitled to recover compensatory and punitive damages in an amount to be proven at trial, and other relief that the Court may deem proper.

WHEREFORE, Tuition Options demands judgment against PPSL and MAYER for compensatory and punitive damages for PPSL's and MAYER's defamatory actions, interest, and such further relief as the Court deems appropriate.

---

[1] Notwithstanding this allegation, Tuition Options maintains that it is not a public figure and not required to prove actual malice.

Respectfully submitted,

TACHE, BRONIS AND DESCALZO, P.A.
150 S.E. 2 Avenue, Suite 600
Miami, Florida 33131
Telephone:   (305) 537-9565
Facsimile:    (305) 537-9567

By: */s/ Marissel Descalzo*
       **Marissel Descalzo, Esq.**
       Florida Bar. No. 669318
       mdescalzo@tachebronis.com
       service@tachebronis.com
       *Counsel for Plaintiff Tuition Options LLC*