**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-81293-CV-MIDDLEBROOKS

TUITION OPTIONS, LLC,
*a Delaware Limited Liability Company*,

      Plaintiff,

v.

PROJECT ON PREDATORY STUDENT LENDING, INC., *a Massachusetts Nonprofit Corporation*, and MAYER LAW PLLC, *a Florida Limited Liability Company*,

      Defendant.

_____/

## ORDER ON MOTIONS TO DISMISS

THIS CAUSE comes before the Court in light of the Defendants' Motions to Dismiss for failure to state a claim (DE 19; DE 20). On November 28, 2024, Plaintiff filed two responses to both Motions to Dismiss (DE 29; DE 30), and on December 5, 2023, Defendants replied. (DE 32; DE 33). For the following reasons, I am going to grant both Motions.

### I.    FACTUAL BACKGROUND[1]

On December 2, 2022, Defendants Project on Predatory Student Lending, Inc. ("PPSL"), and Mayer Law, PLLC ("Mayer Law")—two law firms—filed a class action lawsuit against

---

[1] Because this cause comes before the Court on motions to dismiss, I accept all facts in the Plaintiff's well-pleaded complaint as true and construe them in the light most favorable to the Plaintiff. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the Plaintiff with all reasonable inferences from the allegations in the Complaint. *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

several defendants ("Lawsuit 1"), including a for-profit nursing school ("HCI") on behalf of a class of students.

HCI offers an institutional loan program for students who need financial assistance. The loan program allows students to enter retail installment contracts, where HIC is the named lender on the contract, and the student is the named borrower. Plaintiff, Tuition Options, LLC ("Tuition Options"), is a regulated student loan servicer that services HCI's loan program as well as over 6,000 schools with over 19 million students. Over 90 percent of Plaintiff's servicing revenues come from Title IV and non-Title IV schools, which are subject to high standards of disclosure and compliance.

In Lawsuit 1, Defendants assert that HCI is engaging in a pattern of conduct that violates federal and state law. Their complaint alleges that HCI deliberately schemes to block its RN Program students from graduating and taking the nurse licensing exam and that HCI misrepresents its accreditation status and licensing exam passage rates to obtain higher rates of enrollment. Lawsuit 1 asserts a claim against HCI under the Florida Deceptive and Unfair Trade Practices Act, as well as claiming that HCI intentionally targets Black students with predatory lending practices. Accordingly, the nursing students comprising the class are seeking to have their loans canceled and payments refunded as well as an injunction requiring HCI to allow them to all take the nurse licensing exam.

Plaintiff in this action is not a defendant in Lawsuit 1. However, Defendants refer to Plaintiff throughout their pleadings. The pleadings suggest that Plaintiff was both involved with HCI's predatory lending practices and is unlicensed to engage in retail installment transactions in direct violation of Florida Stat. 520.32(1). Plaintiff alleges—and for purposes of this Motion is considered fact—that twenty-two (22) statements contained within Defendant's original public

Complaint as true and construe them in the light most favorable to Plaintiff. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors Plaintiff with all reasonable inferences from the allegations in the Complaint. *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

The Eleventh Circuit has held that a district court may consider affirmative defenses when ruling on a pre-answer motion to dismiss under Rule 12(b). *See Cottone v. Jenne,* 326 F.3d 1352, 1357 (11th Cir. 2003) ("A complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim.") (overruled on other grounds); *cf. Smith-Haynie v. D.C.,* 155 F.3d 575, 578 (D.C. Cir. 1998) (A court may consider an affirmative defense when "the facts that give rise to the defense are clear from the face of the complaint."); *Rodi v. S. New England Sch. Of L.*, 389 F.3d 5, 12 (1st Cir. 2004) ("[A] properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense.") Thus, even when construing all facts in favor of the Plaintiff, if the four corners of Plaintiff's Complaint make clear that any allegedly defamatory statements would be protected by an absolute litigation privilege, it is appropriate to dismiss the case. *See Jackson*, 372 F.3d at 1277 (11th Cir. 2004) ("Here, the complaint 'affirmatively and clearly' establishes that the challenged conduct related to [outside] litigation, and therefore, that the litigation privilege bars the action.").

### III. APPLICATION

#### A. Statements made in Pleadings.

In Defendants' Motions to Dismiss, both argue that Plaintiff's claims fail as a matter of law. Defendants contend that under Florida law, any allegedly defamatory declarations that they made are absolutely privileged as statements produced in the course of litigation.

"The law in Florida has long been that defamatory statements made in the course of judicial proceedings are absolutely privileged, and no cause of action for damages will lie, regardless of how false or malicious the statements might be, so long as the statements are relevant to the subject of inquiry." *Fridovich v. Fridovich*, 598 So.2d 65, 66 (Fla. 1992). Florida recognizes such a robust privilege because "[a]lthough the immunity afforded . . . may indeed bar recovery for bona fide injuries, the chilling effect on free testimony would seriously hamper the adversary system if absolute immunity were not provided." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., v. U.S. Fire. Ins. Co*, 639 So.2d 606, 608 (Fla. 1994). Indubitably, Plaintiff seeks relief from allegedly defamatory statements made during the course of a class action judicial proceeding. (*See* DE-1 at ¶ 15) ("[T]here are numerous false, misleading and defamatory references to Tuition Options in *various public pleadings* filed by PPSL and Mayer . . . .") (emphasis added). The question therefore becomes if the allegedly defamatory statements are related to the judicial proceeding.

I agree with the Defendants that the allegedly false and misleading statements are relevant to the lawsuit in which they appeared, and therefore, they hold a privileged status. This step of the inquiry is broad; the statements must be *wholly irrelevant* from the judicial proceeding for a court to find that the litigation privilege does not apply. *See Fridovich*, 598 So.2d at 66 (Statements made in pleadings are absolutely privileged "so long as the statements *are relevant* to the subject

complaint are categorically false. Plaintiff attaches a list of the false statements to this Complaint. (DE 1-2).

Several times prior to filing this lawsuit, Plaintiff reached out to Defendants to clarify the false statements and demonstrate that the pleadings were false with regard to Plaintiff's role. (DE 1-3). Nevertheless, Defendants subsequently amended their pleadings in Lawsuit 1 to contain even more false statements about Plaintiff. Once again, Plaintiff's counsel reached out to Defendants to correct the erroneous statements. However, after that, Defendants filed a second amended complaint in Lawsuit 1. This time, the complaint contained thirty-three (33) false statements about Plaintiff. Moreover, Defendant PPSL later published two articles to its website relating to Lawsuit 1. Both those articles contain hyperlinks to the state court pleadings that have been republished by at least one other third party website.[2]

Thereafter, Plaintiff filed this lawsuit, asserting claims for defamation, defamation per se, and defamation by implication. Both Defendants in this action have moved to dismiss the Complaint for failure to state a claim, arguing that any allegedly false statements are absolutely privileged under Florida law.

## II.     LEGAL STANDARD

I evaluate a 12(b)(6) motion to dismiss under the standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. Because this cause comes before the Court on a Motion to Dismiss, I accept all facts in the Plaintiff's well-pleaded

---

[2] There are no allegations in the Complaint whatsoever that Defendant Mayer Law republished the pleadings to any platform.

3

of inquiry.") (emphasis added); *see Gursky Ragan, P.A. v. Ass'n of Poinciana Villages, Inc.*, 314 So. 3d 594, 595 (Fla. Dist. Ct. App. 2020) ("In determining whether a statement bears some relation or connection with the subject inquiry, Florida courts apply a broad standard."). The exhibits that list the allegedly false statements demonstrate that the statements relate to the underlying Equal Credit Opportunity Act, Florida Deceptive and Unfair Trade Practices Act, and Title VI claims that Defendants raised in Lawsuit 1. (DE 1-3). For example, the statement, "The retail installment contract specified Tuition Options as an assignee and a servicer of the agreement," which Plaintiff claims is either defamatory or misleading, certainly provides background as to the "deceitful pattern of behavior by [HCI]" when it "steer[ed] students into retail installment contracts . . . [that] lack the protections of federal student loans." (DE 1-3; DE 1-4). Although I decline to repeat every allegedly defamatory statement here, upon a review of the attached exhibits, I find that all statements made by Defendants about Plaintiff in its pleadings were related to the underlying proceeding.

Moreover, Plaintiff's reliance on *DelMonico v. Traynor*, 116 So.3d 1205, 1208 (Fla. 2013), to suggest I should narrow Florida's litigation privilege is misplaced. The Florida Supreme Court held in *DelMonico* that the litigation privilege does not "sweep so broadly as to provide absolute immunity from liability to an attorney for alleged defamatory statements the attorney makes during *ex-parte, out-of-court questioning of a potential, nonparty witness in the course of investigating a pending lawsuit*." *Id.* at 1208 (emphasis added). The Court explicitly declared in that "narrow scenario," a *qualified* privilege applies. Such a privilege immunizes the statements only if the plaintiff can prove "express malice." *Id.* Unlike Plaintiff's characterization of the holding of *DelMonico*, I find that it reinforces my conclusion here. Those statements made in court filings before a judicial officer—much less, in judicial complaints—are absolutely privileged from

defamation liability. Allegations in pleadings lie at the heart of the policy behind such broad immunity; protecting these statements from liability is necessary to safeguard the truth-seeking function of the adversarial system. *See id.* at 1209 ("[T]he purpose of absolute immunity is not 'advanced by protecting a lawyer who is defaming a party to a witness *outside of a proceeding at a time when both parties are not present and do not have an opportunity to be heard.*'") (emphasis added).

Accordingly, I find that Plaintiff has failed to plead any claim against Mayer Law, and I will grant Mayer Law's motion to dismiss in its entirety. Further, I find that Plaintiff has failed to plead a claim against PPSL with regard to any allegedly defamatory statements that appear in the pleadings, and I will dismiss those claims as well.[3]

**B.    Statements republished by PPSL on its website.**

One of Plaintiff's Responses hones in on why specifically its republication claim against PPSL should survive a motion to dismiss. (DE 29). Plaintiff argues that it has pleaded a plausible claim for relief specifically with regard to PPSL hyperlinking the defamatory pleadings on its public website within two articles describing Lawsuit 1.[4] (DE 1 at ¶ 44). Plaintiff emphasizes the

---

[3] I note that Plaintiff's Complaint asserts three counts against the two Defendants—defamation, defamation per se, and defamation by implication. Under each Count, it groups together all of its factual allegations. Plaintiff fails to expressly state that it is bringing separate claims against PPSL for the comments made in the original pleadings, as well as for republishing those pleadings to its website. Such a failure is characteristic of a shotgun pleading. *See Peele v. State Farm Mut. Auto. Ins. Co.*, No. 22-14235, 2023 WL 4995103, at *1 (11th Cir. Aug. 4, 2023) (identifying one category of shotgun pleadings that are subject to dismissal as complaints that "do not separate each cause of action or claim for relief into separate counts"). However, despite the fact that Plaintiff is counseled in this matter, I will interpret the Complaint as bringing all three counts against Defendant PPSL for two *separate* instances: the initial filing of the Complaint and the subsequent republication of the Complaint online.

[4] *Roberson v. HCI*, PROJECT ON PREDATORY STUDENT LOANING, https://www.ppsl.org/cases/roberson-v-hci; *Nursing Students Sue For-Profit School, HCI, for Deceitful Scheme*, PROJECT ON PREDATORY STUDENT LOANING,

potential harm that such republication has caused it due to the fact that at least one third party website has republished PPSL's articles.[5] (DE 1 at ¶ 45). Plaintiff argues these articles constitute unprivileged defamation because they are an "ex parte publication of such statements [that were] not in furtherance of the underlying litigation and instead designed to garner publicity at the expense of Tuition Options' reputation." (DE 29 (citing DE 1 at ¶¶ 66, 73, 82)). According to Plaintiff, such pleaded facts state a plausible claim for relief under either New Jersey or Massachusetts law and should survive a motion to dismiss, as the law of one of those states dictates the outcome.

Under *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), a federal court sitting in diversity must apply the choice-of-law principles of the state in which it sits. Florida resolves conflict-of-laws questions according to the "most significant relationship test," which requires the court to consider a variety of factors before determining which state's law applies in a multi-state tort action. *See Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980). Plaintiff argues that either New Jersey or Massachusetts law applies to the republication claim because PPSL is a Massachusetts nonprofit corporation and published links to the pleadings on its website and in press releases, and Tuition Options is a New Jersey company that experienced harm to its reputation in New Jersey. As Massachusetts has a negligible connection to this case,[6] I will consider whether New Jersey or Florida law applies.

---

https://www.ppsl.org/news/nursing-students-sue-florida-for-profit-school-hci-college-for-deceitful-scheme-to-block-students-from-taking-licensing-exam-and-trap-them-in-debt.

[5] Ayla Roberts, *4 Nursing Students Sue Florida College for Alelged NCLEX Scheme,* NURSE.ORG (Jan. 31, 2023), https://nurse.org/articles/hci-college-florida-nursing-student-lawsuit.

[6] Under the most significant relationship test, Massachusetts has one factor that might weigh in favor of deciding that its law dictates the outcome of this claim—PPSL is a Massachusetts

The most significant relationship test considers "(a) where the injury occurred, (b) where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) where the relationship, if any, between the parties is centered." *See Bishop v. Fla. Specialty Paint Co.,* 389 So.2d 999, 1001 (Fla. 1980) (citing *Restatement (Second) of Conflict of Laws* §§ 145–46 (1971)). Florida explicitly recognizes that although "[t]he state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law . . . ., the Restatement rule recognizes that the state where the injury occurred may have little actual significance for the cause of action." *Bishop*, 389 So.2d at 1001. In this instance, Plaintiff is a New Jersey limited liability company. However, every other choice-of-law factor weighs in favor of a conclusion that Florida state law applies. Plaintiff is a third-party loan servicer that serviced loans to students attending a Florida nursing school. The statements at issue were pleaded in a class action complaint filed in Florida. Many of the statements that Plaintiff takes issue with deal with whether Plaintiff violated *Florida* state law. Plaintiff itself chose Florida as the forum through which to bring this lawsuit, and it cites in its Complaint that "a substantial part of the events or omissions giving rise to the claim *and the harm to Tuition Options' business* occurred within the Southern District of Florida." (DE 1 at ¶ 8). I decline to override Plaintiff's own assertions and determine that the bulk of the harm to its reputation occurred in New Jersey. Accordingly, I conclude that Florida's interest in resolving this case outweighs any other state's.

My understanding of the robust privilege that Florida provides to statements in court-filed litigation documents would protect this scenario. Although I am unaware of any state appellate

---

company. I find this negligible in my choice-of-law consideration when compared to every other factor analyzed.

9

decisions directly on point, Florida courts suggest that parties who hyperlink court documents on a website should be immune from defamation liability for the same rationale as protecting any other statement that arises during a judicial proceeding. *See Ball v. D'Lites Enterprises, Inc.*, 65 So.3d 637, 641 (Fla. Dist. Ct. App. 2011) ("[A]t most, [our precedent] finds the publication of the complaint or those documents which would be public records when filed in court would be covered by the judicial absolute immunity, because these documents are part of the judicial proceeding.") (citing *Stewart v. Sun Sentinel Co.*, 695 So.2d 360 (Fla. 4th DCA 1997)). Indeed, the Complaint does not plead any facts from which I could infer that PPSL was engaging in some sort of public relations campaign smearing Plaintiff. *Compare Young v. Kopchak*, 368 So.3d 1001, 1005 (Fla. Dist. Ct. App. 2023) (determining that statements posted to a defendant's Facebook profile regarding his family member's speculated motives for filing a lawsuit against him were not privileged because they "were not made in the proceedings itself, nor [were they] made to a participant connected to the proceeding such as a witness") (internal quotations omitted) (alternation in original); *Ball*, 65 So.3d at 639 (analogizing that statements made on the internet that are akin to "calling a press conference with the media or otherwise publishing defamatory information to the newspapers or other media" would not be afforded the absolute litigation privilege). The articles that Plaintiff alleges are defamatory do not even identify Plaintiff by name but rather provide background on the lawsuit to which Defendant itself is a party as well as hyperlinking to court documents that are otherwise publicly accessible.

Accordingly, I find that Plaintiff's claim for defamation as to PPSL's republication of the public pleadings likewise fails as a matter of law.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, it is **ORDERED AND ADJUDGED:**

1) Defendant Mayer Law, PLLC's Motion to Dismiss (DE 19) is **GRANTED**.

2) Defendant Project on Predatory Student Lending, Inc.'s Motion to Dismiss (DE 20) is **GRANTED**.

3) Plaintiff Tuition Option, LLC's Complaint is dismissed **WITH PREJUDICE**.

4) The Clerk of Court **SHALL CLOSE** this case.

5) To the extent that Defendants seek sanctions for Plaintiff's filing of this lawsuit, I decline to issue any.

6) A decision on Defendant Mayer Law's request for its attorneys' fees and costs shall issue by separate order.

7) All pending motions are **DENIED AS MOOT**.

**SIGNED** in Chambers in West Palm Beach, Florida, this ___ day of April, 2024.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE